(No. 3998— )

LOUIS F. OPEL, *vs.* STATE OF ILLINOIS.

*Opinion filed January 14, 1947.*

CLAIMANT, pro se.

GEORGE F. BARRETT, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for respondent.

DAMRON, J.

On November 9, 1945, this claimant was a member of a group employed by the Division of Highways in Worden, Madison County. The weather was cold, and the battery of one of the trucks assigned to the group did not have sufficient power to start the motor. It was decided to tow the truck behind another. Since the choke was not operating, claimant was ordered to ride the front end of the towed truck and pour gasoline into the carburetor as the truck was pulled as aforesaid. While the claimant was pouring the gasoline as ordered, the motor backfired setting the gasoline in the carburetor on fire and blowing flaming gas out of the carburetor onto claimant and the front of the truck. Claimant's face, neck, head, and hands were covered with burning gasoline and burned.

Claimant was at once taken to the St. Francis Hospital, Litchfield, where he was placed under the care of Dr. Harry A. Yaeger. On July 19, 1946, Dr. Yaeger sent the following report to the Division of Highways:

"Final report and resume of the case of Mr. Louis Opel of Worden, Illinois, a State highway employee.

Mr. Opel sustained extensive first to third degree burns on the entire head, face, and neck on 11-9-45, a result of a gasoline explosion. Debridement, antiseptic dressings, and shock therapy were carried out in the emergency room at St. Francis Hospital. Penicillin and sulpha drugs by injection were begun immediately. Dressings were left untouched for several days until febrile reaction indicated a change to wet dressings. These were continued up to December 4th, at which time a large graft 6 x 10 cm. was applied between the vertex and the occiput to cover about one-fourth of the total granulating area. Only this part was grafted because of the fact that a moderate amount of infection persisted which did not respond to the penicillin and sulpha drugs. At least 95% of this grafted area remained viable and grew in good shape. Subsequently on January 17, 1946, the remaining granulating area occupying the left temporal parietal and pre-and-post auricular areas was grafted with a Padgett dermatome split thickness graft. Subsequently it was found that about 85% of this grafted area remained viable. Repeated attempts to epithelize the residual granulating areas met with difficulty. Various agents including red blood cell powder, sulfa and urea powder, silver nitrate, and other usual agents were used. These areas undoubtedly would have responded well to small Thiersch grafts but the patient refused further treatment along this line. As a result it was necessary to continue with the above named agents in the attempt to heal these areas. This was accomplished with considerable difficulty and delay which was previously predicted to the patient. These dressings were applied on an average of four-day intervals. At the present time it is entirely healed. Because of the fact that the patient is bald, there is, fortunately, relatively little disfigurement and in these areas denuded of hair the hair from adjoining areas will suffice to cover to a considerable extent. In spite of the patient's objection to the Thiersch grafts which would have terminated the difficulty of repeated dressings, there is very little scarring evident. The skin has practically normal texture and color, and it is difficult to distinguish the burned and grafted areas from the adjoining skin. I feel that the end result may be considered thoroughly satisfactory and disfigurement minimal.

Disfigurement of the right ear is minimal and confined to the helix. The left ear was severely burned particularly along the helix which shows, as you will notice on the picture, a moderate degree of disfigurement. I would estimate about 20% loss of the helix on the right ear and about 50% on the left ear."

The claimant, at the request of the Court was present for observation on January 14, 1947, at Springfield.

At the time of his injuries, claimant was sixty-two years of age and had no children under the age of six-

teen years dependent upon him for support. He is partially bald. When he is facing you his ears have the appearance of small horns protruding from the upper part of each ear. This is a result of the partial destruction of the helix of each ear. It is more pronounced on the right ear. There is noticeable scar tissue below his chin, on his scalp and above his left ear. These scars are the result of severe third degree burns and are permanent. He will be required to carry them throughout his liftime.

Considering this record, the medical reports, and our personal observation of the claimant, we find as follows:

That the injuries complained of were received in the course of the employment, that due notice was given respondent as required by Section 24 of the Workmen's Compensation Act; that all necessary medical and hospital expenses amounting to $967.10 were furnished by respondent; that claimant was disabled from the date of his injuries to March 26, 1946, for which he was paid compensation in the sum of $200.42; that his earnings for one year next preceding his injuries totaled $1,330.15; that his average weekly wage was $25.57 making his weekly compensation rate $15.35; that the scars and disfigurements received by claimant are compensable.

An award is hereby entered in favor of Louis F. Opel, the claimant, as follows:

The sum of Twelve Hundred ($1,200.00) Dollars as provided in Section 8, Paragraph (c) of the Workmen's Compensation Act to be paid claimant at the rate of $15.35 a week. Of this amount the sum of Six Hundred and Forty-Four Dollars and Seventy Cents ($644.70) has accrued and is payable forthwith in a lump sum. The remainder, amounting to the sum of Five Hundred and Fifty-Five Dollars and Thirty Cents ($555.30), is pay-

able to claimant at the rate of $15.35 a week commencing January 21, 1947 for thirty-six weeks with one final payment of Two Dollars and Seventy Cents ($2.70).

This award is subject to the approval of the Governor as provided in Section 3 of ''An Act concerning the payment of compensation awards to State Employees.''